**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

UNITED STATES OF AMERICA,

      Plaintiff,

v.                                                                    Case No. 1:21-cr-01930-MLG-1

ANGEL LARA,

      Defendant.

<u>**MEMORANDUM OPINION AND ORDER DENYING WITHOUT PREJUDICE
DEFENDANT'S MOTION TO RELEASE MR. LARA AND DISMISS THE
INDICTMENT**</u>

      This matter comes before the Court on Defendant Angel Lara's Motion to Release Mr. Lara and Dismiss the Indictment ("Motion") (Doc. 32), filed January 30, 2023. Having reviewed the briefing and applicable legal authorities, and having held a hearing on the Motion on April 14, 2023, the Court denies the motion without prejudice and orders the Attorney General to admit Defendant to FMC Butner or a similar facility within seven days of the entry of this Order.

**INTRODUCTION**

      The Court is presented with two questions not previously addressed by courts in this district. First, when does the four-month time frame set out in 18 U.S.C. § 4241(d) begin to accrue? Second, are there any constraints on how long a person deemed incompetent may be held in custody while awaiting hospitalization at a treatment facility for competency restoration? For the reasons explained below, the Court holds for the first question that the four-month time frame in Section 4241(d) begins at the time the defendant is hospitalized. As for the second question, the

Court finds that the pre-hospitalization custody period is subject to reasonableness limitations

pursuant to *Jackson v. Indiana*, 406 U.S. 715 (1972).

## FACTUAL BACKGROUND

On December 21, 2021, Defendant Angel Lara was charged with attempted bank robbery

in violation of 18 U.S.C. § 2113(a). Doc. 18. The criminal complaint alleges the following:

> On November 30, 2021, at approximately 2:10 p.m., a bank robbery in progress was reported at a Wells Fargo branch . . . [in] Albuquerque, New Mexico . . . . The suspect entered the bank, approached the bank teller stations, and stated "*follow this*" while he presented a demand note to the bank teller. The note stated the following: "*Im robbing the bank call the news channels.*" The victim bank teller pressed the hold up alarm button and hid under the teller station without acknowledging the subject's demand note. . . .
>
> The security officer at the location heard the suspect yelling at the bank tellers and approached him. The suspect had both of his hands in his jacket pockets. He raised his right hand inside his pocket and pointed it towards the security officer and said, "*I have a gun and if you have one I suggest you put it down.*" The security officer told the suspect he was unarmed. The suspect, while still standing in front of the security officer with his right hand in his pocket pointing something at him, told him he was not there to rob the bank or hurt anyone but was there because his parents were in trouble.
>
> The security officer attempted to calm the suspect down. He was still yelling to call the police and all the news channels. The suspect walked over to another bank employee who was [seated] at a [nearby] desk and requested the employee to call 911. The bank employee told the suspect she was not allowed to call 911. He left the employee's desk and returned to the teller stations where he continued to ask the tellers to comply with his demands and no one will get hurt.
>
> Albuquerque Police Department (APD) officers responded to the location. Officers entered the bank and observed the subject inside the bank with his right hand inside his jacket pocket. He told officers he had a gun and pointed his right hand, still inside his pocket, towards the officers. The officers exited the bank. At the time of the officers' arrival, two customers, bank employees, and the security officer exited the bank through the back door. Six employees were still trapped behind the teller station. While the suspect was interacting with police officers, the six employees were able to hide in a small closet behind the teller station until the suspect was taken into custody.

Doc. 1 (numbered paragraphs omitted). Defendant was arrested the day of the incident and has

remained in continuous custody since then. Doc. 32 at 2.

At counsel's request, Defendant was evaluated by a local forensic psychologist who opined that he was not presently competent to stand trial. Thereafter, defense counsel submitted an unopposed, sealed motion to determine mental competency, which included as an attachment the psychologist's evaluation and findings. Doc. 29. The Court entered a subsequent stipulated order finding Defendant incompetent on August 18, 2022. Doc. 30. The Court placed Defendant in the custody of the Attorney General under 18 U.S.C. § 4241(d) and stated that the Attorney General "shall hospitalize Mr. Lara for treatment in a suitable facility for such reasonable period, not to exceed four months, as is necessary to determine whether there is a substantial probability that in the foreseeable future he will attain the capacity to permit the proceedings to go forward." *Id.* at 1. The Court added that "[d]ue to concerns raised by counsel for Mr. Lara about unnecessary delay in treatment and proceedings, the Court urges in the strongest terms that such arrangements be made and carried out as soon as possible." *Id.* at 1–2.

Since then, Defendant has been detained while he waits for an open bed space at the Federal Medical Center in Butner ("FMC Butner"), a competency restoration center in North Carolina. Defendant has been detained continuously since November 30, 2021, and over eight months have elapsed since the Court's order mandating treatment for Defendant. As it stands, Defendant has been in a local jail without access to treatment of any kind. *See id.* (referring to a five month wait when the motion was filed on January 30, 2023). And when Defendant may gain entry to FMC Butner has been, and continues to be, a moving target. According to Defendant, on October 19, 2022, the estimated wait time was 6.3 months; on November 14, 2022, the wait time was approximately seven months. Doc. 32 at 3. On December 28, 2022, the wait time was approximately three months. *Id.* at 4. During the April 14, 2023, hearing on this matter, the United

States Marshals Service estimated that Defendant is likely to be admitted to FMC Butner on May 8, 2023. Doc. 38 (transcript of April 14 hearing) at 35. However, this date is not certain.

## ANALYSIS

### I.      The Insanity Defense Reform Act

In 1984, Congress enacted the Insanity Defense Reform Act ("IDRA"), 18 U.S.C. §§ 17, 4241–47, following the acquittal of John Hinckley for his attempt to assassinate then-President Ronald Reagan. *Shannon v. United States*, 512 U.S. 573, 576 (1994). The IDRA established insanity as an affirmative defense, with the burden of proof on the defendant by clear and convincing evidence, and created a "comprehensive civil commitment procedure." *Id.* at 577. Of import here is 18 U.S.C. § 4241(d), which addresses the procedure for determining a defendant's competency.[1] *United States v. Anderson*, 679 F. App'x 711, 713 (10th Cir. 2017) (citing, among other cases, *United States v. Strong*, 489 F.3d 1055, 1061 (9th Cir. 2007)). That provision outlines the relevant part of the competency evaluation process as follows:

> If, after the [competency] hearing, the court finds by a preponderance of the evidence that the defendant is presently suffering from a mental disease or defect rendering him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense, the court shall commit the defendant to the custody of the Attorney General. The Attorney General shall hospitalize the defendant for treatment in a suitable facility—(1) for such a reasonable period of time, not to exceed four months, as is necessary to determine whether there is a substantial probability that in the foreseeable future he will attain the capacity to permit the proceedings to go forward . . .

---

[1] In 1972, the Supreme Court held that a defendant "committed solely on account of his incapacity to proceed to trial cannot be held more than the reasonable period of time necessary to determine whether there is a substantial probability that he will attain that capacity in the foreseeable future." *Jackson*, 406 U.S. at 738. *Jackson* involved a defendant committed to the custody of the Indiana Department of Mental Health until the Department concluded that "the defendant is sane," an unlikely prospect that had not occurred in the three years the defendant had already been in custody. *Id.* at 719. The Supreme Court prohibited indefinite detention of incompetent defendants when the sole reason for their detention is their incompetency to stand trial. *Id.* at 731.

The statute also allows additional reasonable time in the hospital "if the court finds that there is a substantial probability that within such additional period of time he will attain the capacity to permit the proceedings to go forward." *Id.* § 4241(d)(2). However, the IDRA is silent as to pre-hospitalization procedures and processes.

## II.   The Four-Month Provision of Section 4241(d) is Limited to the Period of Hospitalization.

Defendant moves for the Court to dismiss the indictment against him, arguing that the four-month "clock" outlined in Section 4241(d) has run. In Defendant's view, the four-month period began on the day he was committed to the custody of the Attorney General, which was August 18, 2022, and therefore the statutory authority for Defendant's continued detention expired on December 18, 2022. Doc. 32 at 6.

To be sure, there is some support for Defendant's position. In *United States v. Carter*, 583 F. Supp. 3d 94 (D.D.C. 2022) the district court held that the four-month time limit begins at the time of the court's order declaring the defendant incompetent and committing him to the custody of the Attorney General. In that court's view, Section 4241(d)(1) limited the time of "custody" over a defendant to a total of four months and "to the degree that § 4241(d)(1) allows the government to delay defendants' transportation, those delays must be a part of the 'reasonable period of time, not to exceed four months.'" *Id*. at 100–01 (quoting § 4241(d)(1)). Similarly, in his concurring opinion in *United States v. Donnelly*, after addressing the statutory text and the relevant legislative history, Judge Watford stated it was his view that "Congress plainly imposed four months as the outside limit on the entire period a defendant is committed to the custody of the Attorney General for treatment and evaluation, inclusive of any pre-hospitalization delay." 41 F.4th 1102, 1108 (9th Cir. 2022). This Court respectfully disagrees.

5

Section 4241(d) states, "The Attorney General shall hospitalize the defendant for treatment in a suitable facility . . . for such a reasonable period of time, not to exceed four months, as is necessary to determine whether there is a substantial probability that in the foreseeable future he will attain [competency.]" This language is specific and expressly ties the stated timeframe (four months) to the period of *hospitalization*, not the period Defendant spends in the custody of the Attorney General before admittance to a Bureau of Prisons (BOP) facility. Thus, the "clock" begins at the time Defendant arrives at FMC Butner. A plain reading of the relevant statutory text along with persuasive authority from several courts supports this interpretation. *See Donnelly*, 41 F.4th at 1105 (holding that the four-month limitation applies only to the actual period of hospitalization); *United States v. Castrellon*, No. 22-cr-00112, 2023 WL 2330688 (D. Colo. March 1, 2023) (same); *United States v. Leusogi*, No. 2:21-CR-32, 2022 WL 11154688 (D. Utah Oct. 19, 2022) (same); *United States v. Wazny*, No. 3:21-CR-247, 2022 WL 17363048 (M.D. Pa. Dec. 1, 2022) (same); *United States v. Belgarde*, No. 3:21-cr-58, 2022 WL 540932 (D.N.D. Feb. 23, 2022) (same). The Court therefore concurs with the United States that the four-month "clock" does not begin until Defendant arrives at FMC Butner. Doc. 33 at 5.

III.    **The Pre-Hospitalization Custody Period Must be Reasonable.**

The Court's interpretation of the statutory language in the manner the United States proposes does not conclusively resolve the issue. Defendant has been in pre-hospitalization custody awaiting a bed at FMC Butner for more than eight months—twice the amount of time Congress provided for the full duration of the evaluative process. While Section 4241(d)'s four-month limit does not apply to this period, "[t]he Constitution does not permit any portion of a defendant's commitment under 18 U.S.C. § 4241(d) to last indefinitely." *Donnelly*, 41 F.4th at 1106. Indeed, the Supreme Court has expressly forbidden the indefinite detention of incompetent

6

defendants. *See Jackson*, 406 U.S. at 731 ("[W]e also hold that Indiana's indefinite commitment of a criminal defendant solely on account of his incompetency to stand trial does not square with the Fourteenth Amendment's guarantee of due process."). The Court must therefore examine whether this reasonableness standard applies to pre-hospitalization custody and, if so, whether Defendant's eight-month pre-hospitalization custody period is unreasonable.[2]

The Tenth Circuit has not yet ruled on whether *Jackson*'s reasonableness mandate applies to the pre-hospitalization custody period of a defendant awaiting competency restoration treatment. However, several other courts have resolved the question in the affirmative.

In *Donnelly*, the Ninth Circuit held that *Jackson*'s rule of reasonableness applies to the period of pre-hospitalization custody a defendant experiences while waiting for a bed at a competency restoration facility. 41 F.4th at 1106. In *Donnelly*, the defendant waited eight months for a bed at a competency restoration facility, and the Ninth Circuit found that span of time excessive in violation of *Jackson*. *Id.* The court reasoned that the purpose of the pre-hospitalization custody period was "to allow the Attorney General time to identify a suitable facility and arrange for the defendant's transportation to that facility," and an eight-month delay more than surpassed whatever time was reasonable to accomplish that goal. *Id.*

> We do not think *Jackson*'s 'reasonable relation' requirement permits a pre-hospitalization commitment period, whose purpose is simply to identify an appropriate treatment facility and arrange for the defendant's transportation to that facility, to last longer than the maximum time Congress permitted for the period of hospitalization itself. Thus, we have little difficulty

---

[2] The United States argues that even the three-year custodial period in *Jackson* did not lead to dismissal of the indictment. Doc. 33 at 7; Doc. 38 at 32–33. The *Jackson* Court dealt with the indefinite detention of an incompetent defendant—that is, it involved an order committing the defendant to the Indiana Department of Mental Health until he became competent, whenever that might be. 406 U.S. at 719. By contrast, the present case deals with the reasonableness of an eight-month pre-hospitalization custody period, not an order mandating hospitalization until Defendant regains competency. Because of the different issue at stake in the present case, the Court will not rely on the length of time at issue in *Jackson*.

> concluding that whatever the outer limit of § 4241(d), the length of
> Donnelly's confinement exceeds it. That fact is even more evident today, as
> Donnelly has now been held in the pre-hospitalization custody of the
> Attorney General for more than eight months—twice as long as the
> maximum period Congress authorized for the entire length of a defendant's
> hospitalization.

*Id*. While the court declined to dismiss the indictment, it ordered the defendant to be hospitalized

within seven days, and it added that failure to comply with that timeline may warrant dismissal.

*Id*. at 1107.

A decision out of the District of Utah, *United States v. Leusogi*, followed the Ninth

Circuit's reasoning. No. 2:21-CR-32, 2022 WL 11154688 (D. Utah Oct. 19, 2022). That case

addressed a defendant's challenge to a four-month pre-hospitalization custody period.

Notwithstanding the substantially shorter duration of custody, the district court ordered the same

remedy as the *Donnelly* court: hospitalization within seven days. *Id.* at *3. When the government

failed to comply with this order, the district court issued a subsequent order considering the factors

in *Ehrenhaus v. Reynolds*, 965 F.2d 916 (10th Cir. 1992), including "(1) the degree of actual

prejudice to the defendant; (2) the amount of interference with the judicial process; (3) the

culpability of the litigant; (4) whether the court warned the party in advance that dismissal of the

action would be a likely sanction for noncompliance; and (5) the efficacy of lesser sanctions."

*United States v. Leusogi*, No. 2:21-CR-32, 2022 WL 16855426, at *2 (D. Utah Nov. 10, 2022).

Applying those factors, the *Leusogi* court found that the actual prejudice of the delay was

significant because it violated the defendant's constitutional rights under the reasoning in

*Donnelly*, particularly when the defendant in that case was unlikely to attain competency. *Id.* at

*2–3. The interference with the judicial process was high because it "caus[ed] the matter to remain

stagnant . . . in violation of statute and contrary to judicial efficiency." *Id.* at *3. The court found

the culpability of the United States to be high because the Attorney General had ignored multiple

orders to transfer the defendant to a suitable hospital and because bureaucratic and resource allocation issues had caused the delays. *Id.* The court had provided warning to the United States that dismissal would likely result if the seven-day order was not met. *Id.* Finally, the court found that lesser sanctions, such as another order mandating that the defendant be admitted to a suitable hospital, would not suffice because the Attorney General had not complied with the previous orders. *Id.* In reliance on these factors, the court dismissed the indictment without prejudice. *Id.* at *4.

In *United States v. Wazny*, the court also applied *Donnelly* when considering a delay in the period of pre-hospitalization. No. 3:21-CR-247, 2022 WL 17363048 (M.D. Pa. Dec. 1, 2022). There, the defendant asked the district court to apply its supervisory powers to expedite his transfer to a suitable BOP medical facility after waiting six months for admission. The court found the *Donnelly* court's reasoning persuasive but determined that a wait time of six months fell within the bounds of reasonableness. *Id*. at *5 ("[T]his Court is nonetheless not persuaded that defendant Wazny's current period of pre-hospitalization custody of six-months clearly exceeds what can be deemed a reasonable period of time."). However, Judge Mariani "agree[d] with the Ninth Circuit that eight months exceeds the temporal limits contemplated within § 4241(d)," and that this period of pre-hospitalization detention "facially offends basic due process principles and is presumptively unreasonable." *Id*. at *5–7. With this legal principle in mind, the court rebuffed the government's proposed pre-hospitalization confinement period of eight to nine months. *Id*. at *7. Instead, the court granted the defendant's motion and issued an order mandating the defendant's hospitalization within 30 days. *Id.*

When read together, the preceding legal authorities instruct that "[a]lthough Congress did not provide a specific time limit for a pre-hospitalization commitment period, *Jackson* requires the

duration of any such commitment to bear some reasonable relation to its purpose." *Donnelly*, 41 F.4th at 1106 (internal quotation marks omitted). Accordingly, the Court holds that the period of pre-hospitalization detention, "whose purpose is to simply identify an appropriate treatment facility and arrange for the defendant's transportation to that facility," must be reasonable and should not ordinarily extend beyond "the maximum time Congress permitted for the period of hospitalization itself." *Id.* And while the government must be afforded some latitude in carrying out the logistics to effectuate the IDRA's objectives, the Court has little difficulty concluding that a detention period of eight months is unreasonable and runs afoul of the Constitution's guarantee of due process.[3]

**IV.    To Resolve the Constitutional Violation, the Court Will Order Defendant to be Admitted to FMC Butner within Seven Days of the Entry of this Order.**

Having determined that the period of Defendant's pre-hospitalization detention exceeds the bounds of reasonableness, the Court must decide what to do about it. Resolution of this question has proven difficult and resulted in varied judicial directives ranging from commands to expedite the hospitalization intake process to dismissal of the indictment. *See, e.g.*, *Donnelly*, 41 F.4th at 1108 (remanding to district court with orders to hospitalize defendant within seven days); *Leusogi*, 2022 WL 11154688, at *3 (ordering hospitalization within seven days); *Leusogi*, 2022 WL 16855426, at *4 (dismissing indictment without prejudice after failure to comply with previous

---

[3] The parties also discussed, both in briefing and at the hearing, whether the first factor of the test in *Sell v. United States* is a relevant consideration. 59 U.S. 166 (2003); Doc. 33 at 7–8; Doc. 34 at 6–7; Doc. 38 at 19–20, 27, 30. *Sell* involved the issue of administering antipsychotic medication to an incompetent defendant against his will, and the first factor was whether an important government interest was at stake. 539 U.S. at 179–80. The issue of compulsory medication is not before the Court at this juncture, and the Court declines to transplant that test from its proper context to the present facts.

order); *Carter*, 583 F. Supp. 3d at 105 (granting motion to dismiss indictment but holding it in abeyance to allow the United States to pursue civil commitment proceedings).

      The Court is mindful that the IDRA does not expressly provide a remedy for violations arising from the failure to comply with the Act's various provisions. Nevertheless, decisional authority upholds the district court's power to fashion relief. The *Carter* court, relying on *Jackson*, held that if a defendant could not be restored to competency in a reasonable amount of time, the court must either initiate civil commitment proceedings or dismiss the indictment. 583 F. Supp. 3d at 102 (applying the same remedy to a Section 4241(d) violation). The *Donnelly* court recognized that the statute did not provide for dismissal but did not find that fact to be dispositive; instead, it relied on the supervisory authority of the district court "to order the government to rectify violations of law with remedies shaped to redress the corresponding injury" and instructed the district court to order hospitalization within seven days, with a warning that dismissal may follow a failure to comply. 41 F.4th at 1107–08. *See also Leusogi*, 2022 WL 11154688, at *3 (following *Donnelly* and ordering hospitalization within seven days); *Wazny*, 2022 WL 17363048, at *7 (following *Donnelly* and ordering hospitalization within 30 days). Based on both the Supreme Court's holding in *Jackson* and on the supervisory power of district courts, the Court finds that it may act to redress the constitutional violation at issue.

      One potential remedy, which a number of other courts have employed, is to warn the United States that its conduct is violating Defendant's rights and direct that prompt hospitalization must follow. As noted previously, the Ninth Circuit ordered hospitalization within seven days to resolve the matter; additionally, the courts in *Leusogi* and *Carter* both warned the United States of the possibility of dismissal as a first step, though the matters did not end there. *See Carter*, 583 F. Supp. 3d at 104; *Leusogi*, 2022 WL 11154688, at *3 (stating that "dismissal may become

appropriate" if the Attorney General fails to comply with the order to hospitalize the defendant within seven days). At this juncture, the most effective warning the Court could give would be a similar order to those in *Donnelly* and *Leusogi* requiring Defendant's admission to a suitable competency restoration facility within a limited span of time, such as seven days.

The Court has some ambivalence about the merits of such an order. Certainly, Defendant has waited far too long for an available bed, and he is deserving of immediate admission to FMC Butner. On the other hand, a court order of the type issued in *Donnelly* and *Leusogi* would essentially direct the Attorney General to jump the line for Defendant's admission to FMC Butner. The practical result is a disruption in the flow of patients to FMC Butner (and possibly other facilities). In fact, it is the Court's understanding that Defendant would have been admitted to FMC Butner on April 18, 2023, if not for others who were considered more urgent cases—that is, others who may have also received an order for admission within seven days or a similarly brief timeframe. Doc. 38 at 32, 34. Ordering Defendant to jump the line would only contribute to the delays for other defendants who may have been waiting similar lengths of time, a troubling result in the larger context of the delays many defendants are facing.

The other alternative is dismissal of the pending indictment. That result, which has been characterized as an "extreme sanction[,]" *Donnelly*, 41 F.4th at 1107, nevertheless strikes the Court as warranted given the operative facts. As explained above, Defendant has been in pre-hospitalization custody for over eight months. During that time, Defendant has not received the mental health care he clearly requires, and the government has provided scant explanation for the continuing delay. Indeed, the sole statement from the BOP shedding any light on Defendant's prolonged pre-hospitalization detention comes from a short e-mail to the United States Attorney's office that was sent in January of this year. That correspondence indicates the average wait time is

12

presently nine months but that "the BOP's newest medical facility (in Chicago) was recently activated and should alleviate the backlog." Doc. 33-1. Whatever the cause, the fact of the matter is that the delay is attributable to the BOP's failure to maintain adequate facilities to keep up with the number of patients that require competency restoration. As defense counsel aptly put it at the hearing, "if the Government wants to continue to file charges against severely mentally ill individuals for . . . alleged conduct that may be related to symptoms of their mental health, then the Government needs to figure out how to allocate those resources [to competency restoration facilities]." Doc. 38 at 14. The Court agrees and I am inclined to dismiss the indictment, which would resolve the issue cleanly.

However, because the Court has not yet issued a warning to the United States about the risk of dismissal, it will instead implement this Order allowing the United States to correct its constitutionally deficient course of conduct. The Court warns the United States in no uncertain terms that if Defendant is not admitted to FMC Butner or a suitable facility within seven days of the entry of this order, dismissal of the indictment is highly likely to follow.

## CONCLUSION

For the foregoing reasons, the Court denies Defendant's Motion (Doc. 32) without prejudice. The Court orders that the Attorney General, through the BOP and the U.S. Marshals Service, transport Defendant to FMC Butner or another suitable facility for competency restoration proceedings no later than seven days from the entry of this Order.

**IT IS SO ORDERED.**

_____
UNITED STATES DISTRICT JUDGE
MATTHEW L. GARCIA